[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
{¶ 1} Appellant, Tonetta Jackson, appeals from judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, overruling appellant's objections to a magistrate's decision, and adopting the magistrate's decision granting permanent custody of appellant's minor children to Franklin County Children Services ("FCCS") for purposes of adoption.
 {¶ 2} On September 8, 2000, FCCS filed complaints alleging that Altonique Pederson was an abused/neglected/dependent child, and that Tajae Jackson and Larry Gordon were neglected/dependent children. FCCS also filed a complaint on October 16, 2000, alleging that Da'Quan Jackson was a dependent child.[1] In each of the complaints, FCCS requested that the child be permanently committed for purposes of adoption pursuant to R.C. 2151.353 and 2151.414.
 {¶ 3} Beginning on November 9, 2000, a magistrate of the trial court conducted a permanent commitment hearing concerning all four minors. On December 7, 2000, the magistrate issued findings of fact and conclusions of law, recommending the court find the children to be dependent minors, and award permanent custody to FCCS.
 {¶ 4} Appellant filed objections to the magistrate's decision. On March 16, 2001, the trial court conducted a hearing on the objections. At that hearing, counsel for appellant requested a further hearing so appellant could present her own testimony now that a previously pending criminal case against her had concluded. By judgment entry filed June 29, 2001, the trial court found that "insufficient evidence exists in the record to rule upon the * * * objections," and the court remanded the matter to the magistrate "for additional testimony."
 {¶ 5} The magistrate conducted a hearing on February 6, 2002, at which time appellant testified on her own behalf. On March 18, 2002, the magistrate issued findings of fact and conclusions of law. The magistrate noted that appellant testified she had entered a guilty plea to endangering children arising out of an incident on December 5, 2000, and that this was appellant's second conviction for endangering children. The magistrate also noted that the children had been in placement for an additional 15 months since the December 2000 hearing. The magistrate stated in the decision that the previous findings of fact and conclusions of law as journalized December 7, 2000, "remain unchanged and are hereby reaffirmed and incorporated herein as if fully rewritten," and the magistrate reaffirmed the previous decision granting permanent custody to FCCS.
 {¶ 6} Appellant again filed objections to the magistrate's decision. By entry filed July 22, 2002, the trial court overruled appellant's objections and adopted the magistrate's decision in its entirety.
 {¶ 7} On appeal, appellant sets forth the following two assignments of error for review:
 {¶ 8} "[I.] The lower court abused its discretion in awarding permanent custody only upon ordering appellant to testify after remand of the civil proceedings.
 {¶ 9} "[II.] The decision of the lower court is against the manifest weight of the evidence."
 {¶ 10} Under the first assignment of error, appellant argues the trial court abused its discretion in granting permanent custody to FCCS where, it is contended, the basis for the award rested upon the introduction of testimony ordered by the court after the close of testimony by the parties. As previously noted, after appellant filed objections to the magistrate's December 7, 2000 decision, the court remanded the matter to the magistrate for additional testimony. Appellant maintains the trial court was without authority to demand that the parties submit to further testimony rather than issue a ruling on appellant's objections. We disagree.
 {¶ 11} As previously indicated, during the initial five-day hearing conducted on the issue of permanent custody, appellant did not testify in the matter because of a pending criminal prosecution. However, at the trial court's subsequent March 16, 2001 hearing, counsel for appellant requested a further hearing to allow appellant to "get on the stand" and present her own testimony in the proceedings. (Tr. Mar. 16, 2001, at 23.) As noted by both FCCS and the guardian ad litem, Juv.R. 40(E)(4)(b) provides in part that, in ruling upon objections, "[t]he court may adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter itself." Thus, the court was authorized to hear additional evidence in ruling on objections to the magistrate's decision. Under the circumstances of this case, having requested an opportunity to testify in the matter, appellant cannot now complain that the trial court erred in granting her request.
 {¶ 12} Accordingly, appellant's first assignment of error is without merit and is overruled.
 {¶ 13} Under the second assignment of error, appellant asserts the trial court's decision granting permanent custody to FCCS was against the manifest weight of the evidence.
 {¶ 14} In general, "[p]ermanent custody judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." In re Thompson, Franklin App. No. 02AP-557, 2003-Ohio-580, at ¶ 48. Moreover, "the findings of a trial court are presumed correct since, as the trier of fact, it is in the best position to weigh the evidence and evaluate the testimony." Id.
 {¶ 15} R.C. 2151.414 addresses permanent custody hearings, and states in part:
 {¶ 16} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 17} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 18} "(b) The child is abandoned.
 {¶ 19} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 20} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 21} At the outset, we note that, as to the three oldest children, the trial court made a finding in its July 22, 2002 decision that these children were "in the care of the same foster parent from May 1997 through December 1999," and appellant does not challenge this finding on appeal. The trial court also noted that the youngest child, Da'Quan, was removed from appellant on July 24, 2000, and the court made a finding, pursuant to R.C. 2151.414(E), that the children cannot and should not be placed with appellant within a reasonable period of time.[2] More specifically, the court found applicable R.C.2151.414(E)(1), which states in part:
 {¶ 22} "* * * If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 23} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."
 {¶ 24} In making a finding under R.C. 2151.414(E)(1), the court noted that appellant's children had been "repeatedly removed from her home, going back to 1996, even where services and assistance have been provided by Children's Services, including beds for the children * * *." The court agreed with the magistrate's determination that sufficient evidence existed under this statutory factor.
 {¶ 25} The magistrate, in his decision, noted that the three oldest children had experienced removals from parental care in 1996, 1997, 1999 and 2000, and had spent "significant amounts of time" living with the foster parent. The magistrate found that FCCS had provided community service assistance, financial and material assistance and referrals for counseling and parental education, but that appellant, despite completing parental education and some counseling, had still left the children unsupervised. The magistrate noted that appellant's psychological evaluation indicated deficiencies in her ability to meet her own needs as well as those of others, that she has "limited coping skills and tends to minimize the significance of supervision lapses" and the past injuries to Altonique. Further, appellant had at times expressed "ambivalence toward her future involvement with her children."
 {¶ 26} Based upon this court's review of the record, clear and convincing evidence was presented to establish, pursuant to R.C.2151.414(E)(1), that the children cannot be placed with either parent within a reasonable time or should not be placed with either parent.
 {¶ 27} We now address appellant's contention that the trial court's finding that permanent custody was in the best interest of the children is against the manifest weight of the evidence. At the outset, we note our disagreement with appellant's contention that the basis for the trial court's remand for additional evidence was because there was insufficient evidence presented during the initial five-day hearing to support an award of permanent custody. We do not construe the trial court's remand order as finding insufficient evidence on the issue of permanent custody; rather, the court merely determined that, in light of appellant's contention that she had previously been unable to testify because of a pending criminal charge, additional evidence would be permitted in order for the court "to rule on the aforementioned objections."
 {¶ 28} R.C. 2151.414(D) sets forth the factors relevant in determining the best interest of a child, including, but not limited to, the following:
 {¶ 29} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 30} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 31} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 32} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 33} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 34} R.C. 2151.414(E)(7) to (12) sets forth a list of "the additional factors of whether the parent has been convicted of a crime, withheld medical treatment or food from the child, placed the child at risk of harm due to alcohol or drug abuse, abandoned the child, had parental rights terminated with respect to a sibling of the child, or is incarcerated at the time of the filing of the motion for permanent custody." In re Thompson, supra, at ¶ 46.
 {¶ 35} In the present case, the magistrate found that the three oldest children are "extremely bonded with each other," and that Larry and Tajae have adjusted well to school while under the care of the foster parent. The magistrate also noted that the infant, Da'Quan, is progressing well under the foster parent's care. Regarding evidence on this issue, Antonia Kokaliares, a social worker with FCCS, testified that the bond is very strong between the children and the foster parent. Kokaliares stated, however, that there is a "minimal" bond between the mother and her children. (Tr. Nov. 15, 2000, at 51.)
 {¶ 36} The magistrate made a finding that the children, as expressed through the guardian ad litem, wished to stay with the foster parent. The trial court similarly noted in its decision that the three oldest children had expressed a desire to remain with the foster parent, and that Da'Quan has never been in appellant's care.
 {¶ 37} As previously noted, the trial court made findings that the three oldest children had been in the care of a foster parent for a significant amount of time, and appellant does not challenge the court's finding that these three children had been in the care of the same foster parent from May 1997 through December 1999 (i.e., for 12 or more months of a consecutive 22-month period). The record indicates that FCCS initially became involved with these children in October 1996, and all three were placed in temporary custody in 1997. While Altonique was returned to her father's home in April 1997, she was removed again in July 1997 after receiving second and third degree burns on her body. Altonique returned home in April 1999, but was again placed with the agency in June 1999. Larry and Tajae returned home to their mother in December 1999, after appellant completed a case plan. Further, the magistrate also found in its March 18, 2002 decision that the children had been in placement for an additional 15 months since the hearing in December 2000.
 {¶ 38} The magistrate noted that two relatives had been evaluated as potential caregivers, and that neither was in a position to assume the responsibility. On this issue, Kokaliares testified that Angela Gordon, a grandparent, had a prior criminal record, while another relative was unable to serve as a caregiver because of medical conditions.
 {¶ 39} The magistrate further noted that appellant's psychological evaluation indicated deficiencies in her ability to meet her own needs, as well as the needs of others, and that she has "limited coping skills and tends to minimize the significance of supervision lapses and the past injuries to Altonique." Part of the evidence in this case included the testimony of Dr. Douglas Pawlarczyk, a clinical psychologist, who interviewed appellant and prepared a report. Dr. Pawlarczyk noted that appellant had indicated "in the past she'd * * * bruised her children from the strategies that she used to discipline them." (Tr. Nov. 17, 2000, at 20.) Dr. Pawlarczyk expressed concern that appellant's children "would be placed in some risk if they were in her independent care given the kinds of disciplinary strategies that she discussed in her presentation during the evaluation." Id. He also had concerns about appellant's personality style and problems with depression.
 {¶ 40} Kokaliares testified that, when appellant is faced with a crisis or conflict, she is often unable to focus on the children's needs. From October 1998 through April 1999, appellant expressed an interest in giving the children up for adoption because "she felt that they would be provided better in foster care." (Tr. Nov. 15, 2000, at 17.) At the time the children were returned in December 1999, appellant had "minimally" met her case plan; she did not complete counseling successfully.
 {¶ 41} On December 23, 1999, Kokaliares and Elaine Edwards, a community service worker, visited Altonique's babysitter and observed marks on the child's back. Altonique was taken to a medical center, and other marks were discovered on her leg.
 {¶ 42} On February 15, 2000, Kokaliares and Edwards conducted a home visit at appellant's residence. When they knocked on the door, they discovered that Larry, age six at the time, was in the house alone. When Kokaliares asked Larry where his mother was, he said that she was at the park.
 {¶ 43} Kokaliares then went to her car to retrieve her cell phone, when she observed appellant crossing the street "going away from the apartment." (Tr. Nov. 15, 2000, at 40.) Appellant then noticed Kokaliares and came over to her; Kokaliares told appellant to go to the park and get her other two children. Appellant was upset that the workers had made an unannounced visit. In his decision, the magistrate noted that appellant entered a guilty plea to endangering children arising out of this incident and was sentenced to three years probation (constituting appellant's second conviction for endangering children).
 {¶ 44} Two days after the February 15, 2000 incident, Kokaliares saw the children again and noticed a mark on Larry's back. The children indicated that a friend of their mother's struck Larry with a belt. The agency conducted an investigation and "substantiated physical abuse." (Tr. Nov. 15, 2000, at 47.)
 {¶ 45} Kokaliares observed that temporary custody orders and reunification plans had been unsuccessful over a four-year period, and she knew of no other services that could be offered to help appellant become successful, noting that appellant "had a psychological, she had counseling; she had parenting. We * * * helped with financial assistance and material assistance." (Tr. Nov. 15, 2000, at 50.) Kokaliares did not believe there was anything else FCCS could do to reunify appellant with the children that would also alleviate risk to the children.
 {¶ 46} Paula Bussard, a supervisor with FCCS, also testified regarding the agency's attempt to assist appellant. She initially spoke with appellant by telephone about concerns that the children had been unsupervised on occasions; appellant "admitted that was the case and didn't understand why that was a concern to me." (Tr. Dec. 1, 2000, at 11.) Bussard asked appellant whether she knew of any location where Tajae may have been alone with a male and could have been sexually abused, but appellant "didn't appear real cooperative when trying to discuss that." Id. Bussard also asked appellant about marks on Larry, and appellant indicated she was aware that an aunt was responsible for the belt marks.
 {¶ 47} Following their telephone conversation, Bussard scheduled an interview with appellant. During that interview, appellant "again stated she didn't understand the seriousness of the * * * children being left alone." Id. at 13. Appellant admitted leaving her children in the park on previous occasions; appellant stated that "other people were there" at the time, but she "admitted that she didn't even know who those other people were." Id. According to Bussard, appellant did not appear to "understand the seriousness of that." Id.
 {¶ 48} At the time of the hearing, Bussard stated that appellant was not currently attending counseling. Bussard testified that it has been "very difficult to know how to help [appellant] at this time. * * * She's had so many services, we had * * * community service worker all these people involved and it's very difficult to know what services to even offer her at this time * * *." Id. at 14.
 {¶ 49} In his decision, the magistrate found that, in light of the "lengthy time of placement," the previously unsuccessful attempts to return the children to appellant, the lack of available relatives, the "lack of significant interaction with parents and the favorable bond between the children themselves and with [the] foster parent," as well as the wishes of the children, the children are in need of a legally secure, permanent placement that cannot be achieved without a grant of permanent custody. The magistrate thus concluded that the termination of parental rights was in the best interest of the children. The trial court similarly concluded that there was clear and convincing evidence that permanent custody was in the best interest of the children.
 {¶ 50} Upon review of the evidence, we find that there is competent, credible evidence to support the trial court's determination, and we do not find the decision to be against the manifest weight of the evidence.
 {¶ 51} Accordingly, appellant's second assignment of error is without merit and is overruled.
 {¶ 52} Based upon the foregoing, appellant's two assignments of error are overruled, and the judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, are hereby affirmed.
Judgments affirmed.
LAZARUS and BRYANT, JJ., concur.
[1] Appellant is the mother of all four children. According to the complaints filed by FCCS, Larry Gordon is the father of Larry and Tajae, Allan Pederson is the father of Altonique, and Robert Modey is the father of Da'Quan.
[2] In light of evidence that the three oldest children had been in the custody of FCCS for 12 or more months of a consecutive 22-month period (see R.C. 2151.414[B][1][d]), the court was not required to find that these children could not or should not be returned to their mother. In re Williams, Franklin App. No. 02AP-924, 2002-Ohio-7205 ("Under the plain language of R.C. 2151.414(B)(1)(d), when a child has been in a children services agency's temporary custody for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999, a trial court need not find that the child cannot or should not be placed with either parent within a reasonable time.") Id. at ¶ 46.